**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARIO CASTRO,** | : | **No. 3:23cv342** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CHRISTOPHER DEBIAS, a law** | : | |
| **enforcement officer now or formerly** | : | |
| **working for the Borough of Hazleton,** | : | |
| **Pennsylvania, in his personal** | : | |
| **capacity only,** | : | |
| **Defendant** | : | |

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**MEMORANDUM**

Before the court are two motions relative to Defendant Christopher

Debias's motion for summary judgment on the issue of qualified immunity: 1) the

defendant's motion to seal and limit the dissemination of police videos of the

incident prompting this lawsuit; and 2) Plaintiff Mario Castro's motion to take the

defendant's deposition.[1]  These motions are ripe for a decision.

**Background**

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 ("Section

1983") alleging violations of his First and Fourth Amendment rights. (Doc. 1,

Compl.).

---

[1] Defendant labels his motion as one for a protective order, but for the reasons discussed in this memorandum, defendant is seeking more than an order governing information exchanged in discovery.  He is seeking to seal videos to be filed on the public docket and limit how these videos can be disseminated by the plaintiff.

Plaintiff alleges that he travelled to Hazleton City Hall in March 2021 to inquire about a report of assault he made to the Hazleton Police Department several days earlier.  (Id. ¶ 7).  Once there, he used a phone in a hallway to contact a member of the police department. (Id. ¶ 8).  Defendant, a Hazleton police officer, emerged from behind a closed, locked door. (Id. ¶ 9).  Plaintiff then inquired into the status of the report he previously made. (Id. ¶ 10).  Defendant advised plaintiff that the investigating officer to whom he would have to speak was on vacation. (Id. ¶¶ 11-12).  After additional dialogue, defendant turned to leave back through the secure door. (Id. ¶ 13).  Plaintiff alleges the following exchange then occurred:

> [Plaintiff] asked, "What's your name and password?" [sic]
>
> [Defendant] responded, "162."
>
> [Plaintiff] again asked, "What's your name?"
>
> [Defendant] again stated, "162."
>
> As the self-locking door was closing behind [Defendant], [Plaintiff] said, "That's your name – 162? Asshole."

(Id. ¶¶ 14-20).

As plaintiff headed toward the nearest exit, defendant came back out from behind the secure door and approached plaintiff. (Id. ¶¶ 21-22).  Defendant then told plaintiff: "Watch your step on this if you don't want to get arrested! Watch your step! I told you what to do, okay?" (Id. ¶ 23).  Plaintiff, "taken aback, stated,

'Go ahead, arrest me.' " (Id. ¶ 24).  Defendant then demanded that plaintiff "leave City Hall." (Id. ¶ 25).  After additional "agitated words," defendant commanded "OUT!" at plaintiff.[2] (Id. ¶ 26).

Plaintiff avers that he did not comply with the defendant officer's directives. (Id. ¶ 27).  "[W]ithin a second[,]" defendant placed his hands on plaintiff and pushed him toward the exit. (Id.)  Plaintiff avers that the defendant officer screamed at him and pushed him to ground, "[a]ngry that [plaintiff] was not leaving merely upon his lawless command[.]" (Id. ¶¶ 27-28).  Defendant then placed plaintiff in handcuffs and brought him behind the secure door where plaintiff stayed for an unspecified period of time until he was released. (Id. ¶¶ 28-29).  Per plaintiff, the defendant did not explain the reason for plaintiff's arrest. (Id. ¶ 29).  Plaintiff also alleges that the defendant officer broke plaintiff's camera, which was on plaintiff's body during the incident. (Id. ¶ 28).

Based on these facts, plaintiff filed the instant civil rights complaint pursuant to Section 1983.  Count I of plaintiff's complaint asserts a cause of action for false arrest.  Plaintiff alleges that the defendant lacked probable cause to place him under arrest in violation of his Fourth Amendment rights.  (Id. ¶¶ 33-34). Plaintiff also claims his arrest was in retaliation for directing profanity at the

_____

[2] Plaintiff does not specify the speaker of these "agitated words" or whether both parties used such language.

defendant.  Accordingly in Count II, plaintiff brings a claim for retaliatory arrest in violation of his First and Fourth Amendment rights. (Id. ¶¶ 36-40).

Defendant initially filed a motion to dismiss plaintiff's Section 1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6).  In that motion, defendant argues he is entitled to qualified immunity. Under the law, consideration of qualified immunity takes precedence.  See Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002)(citing Hunter v. Bryant, 502 U.S. 224, 226 (1991) (*per curiam*) (other citations omitted) (stressing the importance of resolving immunity questions at the earliest possible stages of litigation).  On a motion to dismiss for failure to state a claim, however, district courts accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Furthermore, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b)(6) motion. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted).

The above standard of review confines the court to the well-pleaded allegations of plaintiff's complaint without consideration of evidence outside the

complaint.  As noted above, plaintiff's complaint indicates that the defendant broke a camera the plaintiff had on his body during the incident. (Doc. 1, ¶ 28). In the parties' case management plan, defendant asserts that both plaintiff and defendant recorded the incident on body-worn video cameras. (Doc. 12).

Against this backdrop, the court converted defendants' motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  Defendant's qualified immunity claim can best be addressed with critical and potentially dispositive evidence: the parties' videos from the incident as it was occurring.  (Doc. 16).

Following conversion of the motion to dismiss to a motion for summary judgment, the parties filed the instant motions.  The defendant officer's motion concerns restricting access to three videos from the police-worn cameras because "the main video from the body worn camera…depicts possible personal, sensitive, and/or confidential information not related to the subject case, discussion(s) about a separate criminal investigation, and personal information of other officers." (Doc. 21, Def. Mot. ¶ 9).  Specifically, the defendant officer seeks an order "sealing the videos, precluding use other than for purposes related to the instant litigation, and precluding production to [p]laintiff himself in order to protect privacy." (Id., requests for relief, p. 3-4).

Plaintiff seeks to take the defendant officer's deposition to counter the motion for summary judgment. (Doc. 23). Plaintiff argues that he should be allowed to question the defendant about "what [the defendant] saw and heard occurring" during the incident to essentially cross-examine the party relying upon the videos, while also ameliorating any potential subconscious biases created by the perspectives of the camera lenses. (Doc. 24, Pl. Br. in Supp. at 3-4). Having been fully briefed, these motions are ripe for a decision.

**Jurisdiction**

As this case is brought pursuant to Section 1983, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Furthermore, the court has jurisdiction pursuant to 28 U.S.C. § 1343(a).

**Analysis**

The court will address defendant's request for an order sealing and limiting dissemination of the police bodycam footage before turning to plaintiff's motion seeking the deposition of the defendant officer.

**1. Defendant's Requests to Seal and Limit Access to Police Videos**

To move this matter to a decision on whether the defendant is entitled to qualified immunity, the court converted a motion to dismiss to a motion for

summary judgment in order to review videos of the incident leading to this

lawsuit, three taken from the perspective of the defendant officer and other

members of the Hazleton Police Department and one taken from the perspective

of the plaintiff.  To rule on that converted motion and make the videos a part of

the summary judgment record, both parties would be required to file these videos

with the Clerk of Court.  Defendant requests that the police bodycam videos be

sealed, that the plaintiff not be given access to these videos, and that the videos

not be used for purposes other than that related to the subject litigation.

In support of his request to seal and limit plaintiff's access, the defendant

officer argues:

> Here, there are portions of the video that go beyond the interaction between Plaintiff and Defendant, but which are necessary for the continuity of the video and a fair and accurate representation of the interaction.
>
> Those portions of the video contain computer entries for other incident reports, daily activity reports, a criminal complaint, and discussions about the facts surrounding the incident that brought Plaintiff to the police department as well as the overtime call out list.
>
> The incident reports, daily activity reports, and criminal complaint could contain personal identifying information (including for juveniles), information related to ongoing investigations, wanted subject information, and even personal medical information – for people that are not parties to this action.
>
> The discussion about the unrelated incident contains names of people unrelated to this subject action. All of

7

those people would have a privacy interest in that information. Some of that information being the same information which the Court has safeguards in place to protect from public access.

However, if these videos are made part of the public record and Plaintiff is provided a copy which he would then be permitted to publish on his YouTube channel, that very protected information would be in the public realm.

The public disclosure could have dire consequences. It could lead to identify theft, others not being able to take advantage of a benefit received from having a record expunged or sealed, or even tarnishing one's reputation and/or name if they were part of an investigation that did not result in charges.

Any release of medical information would violate the Health Insurance Portability and Accountability Act (HIPAA).

Just as important in keeping private, the overtime call out list contains personal home and cell phone numbers of the police department. This is information that should not be put out in the public realm. It would subject them to criminals having access to their personal details and being able to locate their home. We must protect those that protect us.

(Doc. 22, Df. Br. in Supp. 3-5).

Taking a step back and looking at the larger picture, the bodycam videos would be filed of record to support the defendant officer's qualified immunity arguments on a motion initially filed by the defendant.  Documents filed in connection with a motion for summary judgment are judicial records. In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., 924 F.3d 662, 672, 675 (3d Cir.

8

2019)(citing <u>Rep. of the Philippines v. Westinghouse Elec. Corp.</u>, 949 F.2d 653, 660–62 (3d Cir. 1991)).  And it is well-settled that the public enjoys a presumptive right of access to judicial records with such a right rooted in the common law and the Constitution.  <u>See</u> <u>id.</u>  The public's interest in the instant matter is "particularly legitimate and important" because the defendant officer works for the public.  <u>See</u> <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994).  Moreover, the right of public access strengthens confidence in the courts and "public observation diminishes possibilities for injustice, incompetence, perjury, and fraud." <u>In re Cendant</u> Corp., 260 F.3d 183, 192 (3d Cir. 2001)(quoting <u>Littlejohn v. BIC Corp.</u>, 851 F.2d 673, 677–78 (3d Cir. 1988)).

The common law right of public access is not absolute.  To overcome the presumptive right of access, a party seeking a sealing order bears the burden of demonstrating that the interest in secrecy outweighs the public interest.  <u>See</u> <u>In re Avandia</u>, 924 F.3d at 672 (citations omitted).  More specifically, the moving party must show that the material it seeks sealed is information that courts will protect, and that disclosure of the information will work a clearly defined and serious injury to the party seeking closure.[3]  <u>Id.</u>  Broad, vague, and conclusory

---

[3] "The First Amendment right of access requires a much higher showing than the common law right [of] access before a judicial proceeding can be sealed[,]" and is evaluated using strict scrutiny. <u>See</u> <u>In re Avandia</u>, 924 F.3d at 673 (quoting <u>In re Cendant Corp.</u>, 260 F.3d at 198, n. 13)); <u>see also</u> <u>PG Publ'g Co. v. Aichele</u>, 705 F.3d 91, 104 (3d Cir. 2013).  Since the common law allows for less of a showing, which was not met here, the court need not reach a First Amendment analysis in this matter.

allegations of harm are insufficient. Id. at 674 (citations omitted). Concerns about public image, embarrassment, or reputational injury, without more, are insufficient. Id. at 676 (citations omitted).

"[T]he strong presumption of openness inherent in the common law right of access 'disallows the routine and perfunctory closing of judicial records.' " Id. at 677-78 (citing In re Cendant Corp., 260 F.3d at 193–94). When sealing records, district courts must make specific factual findings and articulate the countervailing interests in secrecy sufficient for a reviewing court to determine whether the closure order was properly entered. Id. at 674. Such a process requires an exacting analysis. Id. at 677. That analysis includes a document-by-document review of the contents of the challenged records. Id. at 673 (citing Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 167 (3d Cir. 1993)).

Mindful that that "the common law right of access begins with a thumb on the scale in favor of openness[,]" the instant motion provides little for the court to consider. See id. at 676. Specifically, defendant did not provide the videos for the court to engage in a moment-by-moment review, only broad and conclusory arguments about harm. And, even giving defendant some benefit of the doubt that police videos could contain potentially sensitive information not relevant to these proceedings, the defendant's arguments fall short because the court

10

cannot appreciate his arguments in context with the videos.  See id. at 679 ("blanket assertions of harm that 'could' come to fruition fall short of the clearly defined and serious injury that [the moving party] must articulate to obtain sealing under any standard.").

Finally, addressing defendant's arguments that plaintiff will post videos from the incident on his YouTube channel and thus his access to the docketed videos should be restricted, the court notes that such a request, if granted, would clearly be unconstitutional.  Accordingly, the court will deny the defendant officer's motion.[4]

## 2. Plaintiff's Request to Depose the Defendant Officer

Turning next to plaintiff's motion, he seeks to depose the defendant officer as part of a limited period of discovery prior to supplementing the record on the converted motion for summary judgment.

Plaintiff's request must also be considered in context.  Plaintiff's claims for false arrest and retaliatory arrest, the existence of four videos of the incident, the defendant's assertion of qualified immunity, and the conversion of defendant's

---

[4] The defendant officer did not request any alternate relief such as filing the videos with redaction, i.e. blurring certain portions of the video and/or muting certain audio.  For similar reasons, the court is not in a position to determine whether such redactions would be appropriate without the videos.

11

motion to dismiss to a motion for summary judgment all place this matter into an unorthodox posture.

On one hand, when a motion to dismiss is converted to a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). "Otherwise, weighing the new factual assertions against the facts pleaded in the complaint would invite courts to consider facts and evidence that have not been tested in formal discovery." Robert D. Mabe, Inc. v. OptumRX, 43 F.4th 307, 330 (3d Cir. 2022)(citing Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 775, n. 6 (3d Cir. 2013) (internal quotations and citations omitted)).

On the other hand, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery unless the plaintiff's allegations state a claim for violation of clearly established law. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 817 (1982)).  Put more simply, "liberal discovery rules are at odds with the doctrine of qualified immunity[.]" Graber v. Dales, 511 F. Supp. 3d 594, 599 (E.D. Pa. 2021).  "And qualified immunity may be implicitly denied when a government official otherwise entitled to immunity is nonetheless subjected to 'the burdens of such pretrial matters as discovery.' " Oliver v. Roquet, 858 F.3d 180, 188 (3d Cir. 2017) (quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)).

12

In this case, plaintiff alleges a Fourth Amendment violation for false arrest. This claim fails if the defendant officer had probable cause to believe a crime was being committed. James v. City of Wilkes–Barre, 700 F.3d 675, 680 (3d Cir. 2012).  Plaintiff also alleges First and Fourth Amendment violations for retaliatory arrest.  Generally, absent a showing that the officer lacked probable cause to make an arrest, a retaliatory arrest claim cannot succeed. Nieves v. Bartlett, 587 U.S. 391, 404 (2019); Falcone v. Dickstein, 92 F.4th 193, 210 (3d Cir. 2024), cert. denied sub nom. Murray-Nolan v. Rubin, No. 23-1008, 2024 WL 2262337 (U.S. May 20, 2024).  The presence or absence of probable cause is thus critical in this case.  For the retaliatory arrest claim, it is a threshold matter.  See Nieves, 587 U.S. at 407–08.  And that determination could factor heavily into the qualified immunity analysis if the court chooses to approach this matter by starting with the first prong of the qualified immunity analysis, i.e., whether a plaintiff has demonstrated a violation of a constitutional right.[5]  Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)(citations omitted).

---

[5] "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude than an offense has been committed by the person being arrested." United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002)(citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" United States v. Donahue, 764 F.3d 293, 300 (3d Cir. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 230–31 (1983)). "Generally, "the existence of probable cause is a factual issue." Groman v. Twp. of Manalapan, 47 F.3d 628, 635 (3d Cir. 1995).  A court, however, "may conclude in the appropriate case…that probable cause [exists] as a matter of law if the evidence, viewed

As for the presence of probable cause in the retaliatory arrest context,

Nieves also sets forth a "narrow qualification" of the general rule in

"circumstances where officers have probable cause to make arrests, but typically

exercise their discretion not to do so." 587 U.S. at 407; see also Gonzalez v.

Trevino, 602 U.S. ----, 144 S. Ct. 1663, 1667 (2024)(per curiam).  Thus, the "no-

probable-cause" requirement for a retaliatory arrest claim does not apply "when a

plaintiff presents objective evidence that he was arrested when otherwise

similarly situated individuals not engaged in the same sort of speech had not

been."[6] Nieves, 587 U.S. at 407 (citation omitted).

"The only express limit…placed on the sort of evidence a plaintiff may

present for that purpose is that it *must be objective* in order to avoid 'the

significant problems that would arise from reviewing police conduct under a

purely subjective standard.' " Gonzalez, 144 S. Ct. at 1667 (quoting Nieves, 587

---

most favorably to Plaintiff, reasonably would not support a contrary factual finding." Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997).

[6] The hypothetical example used in Nieves is as follows:

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest. In such a case…probable cause does little to prove or disprove the causal connection between animus and injury[.]

587 U.S. at 407.

14

U.S. at 406)(emphasis added).  For example, reference to a survey of arrest data could sufficiently place a case within the Nieves exception. See id. at 1666–67. But specific comparator evidence is not required to proceed pursuant to that carve-out. Id. at 1667.

Where a plaintiff establishes the absence of probable cause or meets the narrow exception, a plaintiff must then show that retaliation was a substantial and motivating factor behind the arrest, and if that showing is made, the defendant can prevail only by showing that the arrest would have been initiated without respect to the retaliation. Nieves, 587 U.S. at 404, 407–08 (citations omitted).

Here, plaintiff argues that the defendant officer's state of mind must be explored in his deposition because this case involves retaliation.  (Doc. 24, Pl. Br. in Supp. at 5-6).  Based on the case law, the court disagrees.

For both the false arrest and retaliatory arrest claims, a probable cause determination must eventually be made. "[B]ecause probable cause speaks to the *objective* reasonableness of an arrest, …its absence will…generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." Nieves, 587 U.S. at 402 (citing Ashcroft v. al-Kidd, 563 U.S. 731, 736 (2011))(emphasis added). Furthermore, when reviewing an arrest, courts must ask whether the circumstances, viewed objectively, justify the challenged action. Id. at 403 (citing

al-Kidd, 563 U.S. at 736).  "A particular officer's state of mind is simply 'irrelevant,' and it provides 'no basis for invalidating an arrest.' " Id. (citing Devenpeck v. Alford, 543 U.S. 146, 153, 155 (2004)).  In Nieves, the Supreme Court flatly rejected a subjective inquiry in retaliatory arrest cases because "it would threaten to set off 'broad ranging discovery' in which 'there often is no clear end to the relevant evidence[.]' " Id. at 404 (quoting Harlow, 457 U.S. at 817)).

Based on plaintiff's arguments, a deposition of the defendant officer is more likely to probe the subjective versus the objective.  This case is postured at a stage where objective evidence will determine how it moves forward.  Thus, the court will deny plaintiff's motion to take the defendant officer's deposition in this case.

**Conclusion**

For the reasons set forth above, the defendant's motion to seal and limit the dissemination of police videos will be denied as will the plaintiff's motion to take the defendant officer's deposition.  The deadlines for submission of documents and supplemental briefs regarding the motion for summary judgment will be reset with additional instructions. An appropriate order follows.

16

Date: 8/29/24

**JUDGE JULIA K. MUNLEY**
**United States District Court**

17