IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIO CASTRO, | : | No. 3:23cv342 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CHRISTOPHER DEBIAS, a law | : | |
| enforcement officer now or formerly | : | |
| working for the Borough of Hazleton, | : | |
| Pennsylvania, in his personal | : | |
| capacity only, | : | |
|     Defendant | : | |

............................................................................................................

## MEMORANDUM

Before the court is a motion for partial reconsideration filed by the defendant in this action filed pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Doc. 29). Previously, defendant filed a motion to seal and limit the dissemination of police bodycam videos of the incident prompting this civil rights lawsuit. (Doc. 21). By way of memorandum and order dated August 29, 2024, defendant's motion was denied. (Docs. 27-28). Defendant now seeks to file edited versions of the bodycam videos and has styled his motion as either one for reconsideration or as a renewed request for a protective order.[1] In furtherance of the request, the defendant officer has supplied edited and

---

[1] As indicated in the previous memorandum, defendant is not really seeking a protective order regarding information exchanged in discovery. He is now seeking to file edited portions of videos on the public docket in support of a converted motion for summary judgment on the issue of qualified immunity.

unedited versions of three (3) bodycam videos for *in camera* review. Defendant's motion is now ripe for a decision.

**Background**

Plaintiff filed this civil rights action alleging violations of his First and Fourth Amendment rights. (Doc. 1, Compl.). In his complaint, plaintiff alleges that he travelled to Hazleton City Hall in March 2021 to inquire about a report of assault he made to the Hazleton Police Department several days earlier.[2] (Id. ¶ 7). Once there, he used a phone in a hallway to contact a member of the police department. (Id. ¶ 8). Defendant, a city police officer, emerged from behind a closed, locked door. (Id. ¶ 9). Plaintiff then inquired into the status of the report he previously made. (Id. ¶ 10). Defendant advised plaintiff that the investigating officer was on vacation. (Id. ¶¶ 11-12). After additional dialogue, defendant turned to leave back through the secure door. (Id. ¶ 13). Plaintiff alleges the following exchange then occurred:

> [Plaintiff] asked, "What's your name and password?" [sic]
>
> [Defendant] responded, "162."
>
> [Plaintiff] again asked, "What's your name?"
>
> [Defendant] again stated, "162."

---

[2] The facts in this matter remain disputed. These background facts are derived from plaintiff's complaint. In resolving the instant motion, the court takes no position as to the ultimate veracity of plaintiff's allegations.

> As the self-locking door was closing behind [Defendant], [Plaintiff] said, "That's your name – 162? Asshole."

(Id. ¶¶ 14-20).

As plaintiff headed toward the nearest exit, defendant came back out from behind the secure door and approached plaintiff. (Id. ¶¶ 21-22). Defendant then told plaintiff: "Watch your step on this if you don't want to get arrested! Watch your step! I told you what to do, okay?" (Id. ¶ 23). Plaintiff, "taken aback, stated, 'Go ahead, arrest me.' " (Id. ¶ 24). Defendant then demanded that plaintiff "leave City Hall." (Id. ¶ 25). After additional "agitated words," defendant commanded "OUT!" at plaintiff.[3] (Id. ¶ 26).

Plaintiff avers that he did not comply with the defendant officer's directives. (Id. ¶ 27). As alleged by plaintiff, "within a second[,]" defendant placed his hands on plaintiff and pushed him toward the exit. (Id.) Plaintiff avers that the defendant officer screamed at him and pushed him to the ground, "[a]ngry that [plaintiff] was not leaving merely upon his lawless command[.]" (Id. ¶¶ 27-28). Defendant then placed plaintiff in handcuffs and brought him behind the secure door where plaintiff stayed for an unspecified period of time until he was released. (Id. ¶¶ 28-29). Per plaintiff, the defendant did not explain the reason for plaintiff's arrest.

---

[3] Plaintiff does not specify the speaker of these "agitated words" in his complaint.

(Id. ¶ 29). Plaintiff also alleges that the defendant officer broke plaintiff's camera, which was on plaintiff's body during the incident. (Id. ¶ 28).

Count I of plaintiff's complaint asserts a cause of action for false arrest in violation of his Fourth Amendment rights. (Id. ¶¶ 33-34). In Count II, plaintiff brings a claim for retaliatory arrest in violation of his First and Fourth Amendment rights. (Id. ¶¶ 36-40).

Defendant initially filed a motion to dismiss plaintiff's Section 1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 6). Based on the existence of videos of the incident recorded by the parties, the court converted the motion to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). (Doc. 16). The defendant officer then filed an initial motion seeking to fully restrict public access to the bodycam videos. Defendant, however, did not provide the videos for review. (Doc. 27 at 10). The defendant officer also did not request any alternate relief such as filing the videos with redaction, i.e., blurring certain portions of the video and/or censoring certain audio. (Id. at 11, n. 4).

After the above motion to preclude public access was denied, the defendant filed the instant motion for partial reconsideration. (Doc. 29). Having the benefit of the court's prior analysis, defendant now seeks to file the bodycam

videos with ten (10) edits and has supplied redacted and unredacted versions of these videos for an *in camera* review.

Plaintiff has agreed not to contest nine (9) of the proposed edits. (Doc. 35 at 2). The remaining issue, at least between the plaintiff and defendant, is whether the name of a third party should be muted when an earlier incident is discussed by the defendant and other officers in one of the bodycam videos.[4] That issue has been fully briefed, bringing this case to its present posture.

**Jurisdiction**

As this action was filed pursuant to Section 1983, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Furthermore, the court has jurisdiction pursuant to 28 U.S.C. § 1343(a).

**Analysis**

Defendant has filed a motion for reconsideration. "The purpose of a motion for reconsideration…is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(quoting Harsco Corp. v. Zlotnicki,

---

[4] The court uses the term muted for convenience. To be more precise, the defendant officer proposes to replace certain audio with a censoring beep.

779 F.2d 906, 909 (3d Cir. 1985)(internal quotation marks omitted). The movant must demonstrate one of three grounds in order for such a motion to be granted: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice. Id.

In the instant motion, defendant asserts that he cannot produce and make public the unredacted bodycam videos without: 1) revealing sensitive security information related to Hazelton City Hall; 2) risking the safety of other police officers through the dissemination of their personal information; and 3) violating the privacy of non-parties to this action. (Doc. 33. Def. Br. in Supp. at 4). Defendant thus argues that reconsideration is necessary to prevent manifest injustice.

**1. The Right of Access to Judicial Records**

As previously indicated, the bodycam videos would be filed of record in support of the defendant's motion for summary judgment.  The Third Circuit Court of Appeals has long recognized a common law right to public access to all judicial records, proceedings, opinions and orders and related pleadings and exhibits. See In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., 924 F.3d 662, 672, 675 (3d Cir. 2019); Rep. of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 659 (3d Cir. 1991); Littlejohn v. Bic Corp., 851 F.2d 673, 677–78 (3d

Cir. 1988)). Documents filed in connection with a motion for summary judgment are judicial records.[5] In re Avandia, 924 F.3d at 672, 675 (citation omitted). Once a document becomes a judicial record, a presumption of access attaches. Id. at 672 (citing In re Cendant Corp., 260 F.3d at 192).

The right of access strengthens public confidence in the courts and "public observation diminishes possibilities for injustice, incompetence, perjury, and fraud." In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001)(quoting Littlejohn, 851 F.2d at 677–78. Moreover, "the need for public scrutiny is at its zenith when the motion is dispositive." Mine Safety Appliances Co. v. N. River Ins. Co., 73 F. Supp. 3d 544, 559 (W.D. Pa. 2014). The defendant officer is also a public employee, and "[t]he public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official." Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994).

Thus, there is a "strong presumption" of access, "with a thumb on the scale in favor of openness[.]" In re Avandia, 924 F.3d at 672, 675 (citation omitted). The common law right of access, however, is not absolute and the presumption

---

[5] Since the bodycam videos were supplied to the court in conjunction with the motion for reconsideration, they are now judicial records. See In re Avandia, 924 F.3d at 672 (A 'judicial record' is a document that 'has been filed with the court ... **or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings.**' ") (quoting In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001)(emphasis added)).

may be rebutted. Id. at 672. "The party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.' " Id. (quoting Bank of Am. Nat'l. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs., 800 F.2d 339, 343 (3d Cir. 1986)). Specifically, the moving party must show that the material it seeks to limit is information that courts will protect, and that disclosure of the information will work a clearly defined and serious injury to the party seeking closure. Id. (citation omitted). Broad, vague, and conclusory allegations of harm are insufficient. Id. at 674, 678 (citations omitted). Concerns about public image, embarrassment, or reputational injury, without more, are insufficient. Id. at 676 (citations omitted).

When considering requests to limit disclosure, district courts must make specific factual findings and articulate the countervailing interests in secrecy sufficient for a reviewing court to determine whether a limiting order was properly entered. Id. at 674. Such a process requires an exacting analysis. Id. at 673, 677.

Translating the above standard to the instant dispute, the defendant seeks to file edited versions of three (3) bodycam videos in lieu of the full versions. Thinking of these videos as documents, the issue before the court is more akin to filing three unredacted documents under seal in support of the motion for summary judgment, while permitting public access to three redacted versions.

## 2. The Edits Not in Dispute

Defendant has made ten (10) proposed edits to the bodycam videos and nine (9) are unopposed. Nonetheless, "the strong presumption of openness inherent in the common law right of access 'disallows the routine and perfunctory closing of judicial records.' " Id. at 677 (citing In re Cendant Corp., 260 F.3d at 193–94). District courts are directed to engage in "careful factfinding and balancing of competing interests" through a "document-by-document review." Id. at 673 (quoting Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 167 (3d Cir. 1993)). Moreover, "the court has an inherent obligation to review and supervise the files being placed on its docket and a concomitant obligation to assure that the use of its authority to keep matters from public scrutiny" is properly being employed. Mine Safety Appliances Co., 73 F. Supp. 3d at 557 (citing Leucadia, Inc., 998 F.2d at 166). Regardless of the plaintiff's partial concurrence, the court must make specific findings prior to limiting any evidence in support of summary judgment on the public docket. The court proceeds accordingly after an *in camera* review of the edited and unedited versions of the videos.

Several portions of the videos depict an area within the police department where monitors display feeds from surveillance cameras within Hazleton City Hall

and from cameras throughout the City of Hazleton. Specifically, those portions include:

> For the video named Disorderly_Conduct_City_Hall:
>
> 1) 09:56–
> 2) 11:00–16:44
> 3) 17:08–17:14
>
> For the video named Disorderly_City_Hall:
>
> 4) 00:00–00:37
> 5) 00:46–00:58
> 6) 01:55–01:56
> 7) 04:09–04:12
>
> For the video named Disorderly_Person:
>
> 8) 00:00–00:11

(Doc. 29, ¶¶ 14a(i ,iii, iv), 14b(i-iv), 14c(i)).

Defendant asserts that blurring these portions of the videos would protect the security of Hazleton City Hall. Additionally, several of the above portions (Portions #2, #3, #4, #8) include footage of non-public work areas of the police department where documents are posted on walls and piled on desks. One of these portions (Portion #2) includes information displayed on the defendant officer's computer monitor. In that same portion, the defendant officer handles paperwork near where his bodycam is recording. In support of blurring these portions, defendant further argues that these documents are visible and legible and purport to contain information about ongoing criminal investigations.

Additionally, per defendant, the home phone numbers and addresses of police officers are visible on some of the documents in the officer desk area. He argues that the officers could be subject to identity theft and harassment if these portions are not blurred and that such edits would protect the security of the officers and their families. Likewise, per defendant, the information displayed on defendant's computer screen should be obscured since it relates to other matters not involving the plaintiff.

After considering the defendant officer's arguments in conjunction with the *in camera* review of the unredacted videos, the court concludes that the defendant's safety and security concerns are overstated. Hazleton City Hall is a municipal building generally open to the public. Defendant's arguments about surveillance camera locations are not coupled with any actual evidence (such as an affidavit) that the security of the building would be jeopardized if the public caught glimpses of where those cameras were monitoring. Defendant does not advance that the areas being monitored are not open to the public. Moreover, there is nothing in this case to suggest that the building has any hidden security cameras. The bodycam videos' illustration of the interior of the building suggests the opposite, that the security cameras are in full view. (Disorderly Conduct _City_Hall 1:55 (a surveillance camera is visible behind the plaintiff near an exit

door)). Consequently, defendant's arguments about protecting the safety of the building fall short.

Additionally, in the portions of the video depicting the defendant officer walking around police workspaces or sitting at his desk, the court cannot discern any sensitive information on any documents, even when the videos are slowed down to a quarter-speed (.25x) or stopped on frames where documents come into close view. The contents of these documents are grainy and pixelated. Where these documents briefly become clear, they display innocuous information. No names or phone numbers of officers or other third parties are visible whatsoever. The court also cannot discern any information related to other criminal investigations. No further blurring is thus necessary. The resolution of the videos, the angle of the bodycam, and the defendant officer's movements all achieve the same result as blurring.

As for the matters displayed on the defendant's computer monitor, one portion of the bodycam videos briefly displays a police incident log, presumably for the date up to the time plaintiff arrived at the police department. This log displays incident numbers, the type of call, times when the calls came in, the time such calls were cleared, and the location of each incident. The log, however, does not list any individual's name, whether that person be a caller, a suspect, or a victim. To the extent that the court's determination requires "an opportunity for

interested third parties to be heard[,]" the individuals involved in those incidents are not identifiable based on the contents of that screen. Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994)(citations omitted). Moreover, defendant has failed to articulate a reason why dissemination of this log through the bodycam video would cause anyone any specific injury.[6]

Having made only broad and conclusory allegations or allegations that do not match what the bodycam videos reveal, the defendant officer has not rebutted the presumption of openness buttressing the public's common law right of access to judicial records. Thus, the requests to blur the surveillance camera monitors and officer workspaces will be denied.[7]

### 3. The Edits in Dispute

Defendant also seeks to blur and mute portions of the defendant officer's bodycam video where he receives information about a prior incident involving the plaintiff. Defendant seeks to file an edited version of the video named Disorderly_Conduct_City_Hall with muting at the following timestamps:

9) 10:05–10:14

10) 15:09–15:51

---

[6] Shortly after the incident log was minimized on the computer screen, the defendant officer accessed a police database. The defendant officer searched for information regarding the plaintiff. There is no reason for that information to be blurred in the video.

[7] The court need not reach a First Amendment analysis on these portions of the bodycam videos.

(Doc. 29, ¶¶ 14a(ii, iv)).[8]

As alleged in his complaint, plaintiff went to Hazleton City Hall on the date of his incident with the defendant "to inquire about the status of an investigation into a report of assault he made to the Hazleton Police Department several days earlier." (Doc. 1, Compl. ¶ 7). From the *in camera* review, this alleged assault of the plaintiff occurred at a local Kentucky Fried Chicken ("KFC") restaurant a few weeks prior. After plaintiff had been taken into custody for the events relative to this matter, the defendant officer met with another responding officer and discussed this earlier incident. Later in the video, the defendant officer is present when other officers discuss the KFC incident in the desk-duty areas of the police department. As part of his request to file the videos with edits, defendant seeks to mute the name of the individual involved in the KFC incident.[9] Plaintiff opposes and argues that the First Amendment right of public access requires disclosure of that person's name.[10]

---

[8] Pursuant to the analysis in Section 2, defendant is not permitted to blur any part of these portions.

[9] In his reply brief, defendant seems to concede that general information about the incident should be accessible by including a transcription of some of the redacted portions minus the name of the individual involved. (Doc. 36 at 3)

[10] Plaintiff only opposes one of the proposed edits. This position appears inconsistent considering the contents of the unredacted versions of the videos.

Before getting into the parties' First Amendment arguments, the common law right of access presumes that general officer discussion about the earlier incident should be open for public consumption. As with the above proposed edits, the defendant has not met his burden to demonstrate that disclosure of information about the incident will work a clearly defined and serious injury if officer discussion about the incident is disclosed.

Defendant, however, makes a compelling argument about not disclosing the other individual's name as part of the general discussion about the KFC incident. Defendant advances that this third party has a right to privacy that outweighs the public's right to access an unredacted version of the bodycam video. Defendant indicates that "[i]t is unclear whether charges were ever filed against this other individual[.]" (Doc. 36, Def. Reply Br. at 3). Furthermore, per defendant, "[i]f the information is published, this third party nonlitigant could suffer irreparable harm to his reputation including with his peers, his current employer, his job prospects, etc. if the information that he was being charged for assault is made public and it did not or has not happened." (Id. at 4).

After an *in camera* review, it is clear that the full name of the individual accused of assault is mentioned by another officer and then that person's last name is mentioned again when he was discussing the KFC incident with the defendant officer. (Disorderly_Conduct_City_Hall 10:05–10:14). That individual's

first name is twice-mentioned later by the same officer when discussing the incident with the defendant officer and at least three other officers. (Id. 15:09-15:51). At the time the videos were filmed, there was a lack of certainty as to whether that individual was going to be charged, that is, the investigation remained open at the time, and the defendant officer told the plaintiff that the investigating officer was on vacation.

After careful consideration of the issue, the common law standard supports muting that individual's name in the publicly filed bodycam video. Personal identifying information of nonparties is precisely the kind of information that courts will protect. See McCowan v. City of Philadelphia, No. 2:19-CV-03326-KSM, 2021 WL 3737204, at *3 (E.D. Pa. Aug. 24, 2021)(Marston, J.)(collecting cases). Moreover, in this instance, defendant has demonstrated that disclosure would work a clearly defined and serious injury to that individual. That person is not a party in this case. That person may not have been charged with assaulting the plaintiff. Thus, defendant's arguments about that person's privacy interests are persuasive as it relates to the common law standard.

Plaintiff argues that this individual's name should be disclosed under the First Amendment public access standard. (Doc. 35, Pl. Br.in Opp. at 3-4). To date, however, the Third Circuit Court of Appeals has not expressed an opinion

as to whether the First Amendment right of public access extends to summary judgment documents. In re Avandia, 924 F.3d at 680.

To resolve this dispute, the court need not engage in an extended analysis in the absence of further instruction from the appellate courts. Assuming that the First Amendment right of public access extends to summary judgment records, a restriction of such a right is evaluated using strict scrutiny principles. See id. at 673. The First Amendment right of public access is subject to an even stronger presumption of openness and requires a much higher showing to rebut the presumption. See id. (citing In re Cendant Corp., 260 F.3d at 198, n. 13). To prevail, "[t]he party seeking closure may rebut the presumption of openness only if" they are able "to demonstrate 'an overriding interest [in excluding the public] based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " Id. (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1061 (3d Cir. 1984)(brackets in original).

As discussed above, portions of the bodycam video discussing the earlier incident identify a third party by name. That individual maintains a constitutional right to privacy at some level. See C.N. v. Ridgewood Bd. of Educ., 430 F.3d 159, 179 (3d Cir. 2005)("'[T]he right not to have intimate facts concerning one's life disclosed without one's consent' is 'a venerable [right] whose constitutional significance we have recognized in the past.' ")(quoting Bartnicki v. Vopper, 200

F.3d 109, 122 (3d Cir. 1999), aff'd, 532 U.S. 514 (2001) (additional citation omitted)).

And contrary to the plaintiff's arguments, this matter involves more than embarrassment to a third party. As before the court, this individual was accused of a crime (by the plaintiff) and the Hazleton Police Department was investigating at the time of the incident between the parties in this case. At this posture, there is no evidence that this individual was charged with assaulting the plaintiff, let alone convicted. Absent notice to this individual and an opportunity for that person to waive their rights, restricting access to that person's name will protect that individual's privacy interests.

Additionally, this proposed edit is narrowly tailored. The individual's name is mentioned for less than three (3) seconds in twenty-five (25) minutes of bodycam footage. Accordingly, under common law and First Amendment public access standards, defendant will be permitted to mute very brief moments of the video where the full name, first name, or last name of a third-party is mentioned by officers in relation to the incident that precipitated the encounter between the parties at Hazleton City Hall. Such an outcome avoids a manifest injustice to the third party not involved in this lawsuit.

**Conclusion**

For the reasons set forth above, the defendant's motion for partial reconsideration will be granted in part and denied in part. The motion is granted to the extent that the defendant, in support of summary judgment, may file sealed original copies of the bodycam videos and unsealed versions muting the first and last name of the individual involved in an earlier incident with the plaintiff. The defendant's motion will be denied in all other respects. The deadlines for submission of documents and supplemental briefs regarding the motion for summary judgment will be reset with additional instructions. An appropriate order follows.

Date: 11/6/24

JUDGE JULIA K. MUNLEY
United States District Court